The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Edward Garner, Jr. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of Findings of Fact 17, Conclusion of Law 4 and Award 3.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Employer-Employee relationship existed between Plaintiff and the Defendant-Employer.
3. The Defendant-Employer is self-insured with Alexsis Risk Management Company serving as the servicing agent.
4. Plaintiff's average weekly wage is $439.60, which yields a compensation rate of $293.07 per week.
5. Plaintiff is alleging an injury by accident that occurred on July 27, 1993, resulting in an injury to the right knee.
6. The Defendant-Employer has denied liability.
7. The issues to be determined by the Commission are whether Plaintiff suffered an injury by accident as alleged, and if so, what are the compensable consequences.
8. Plaintiff received salary continuation after the date of his alleged injury, excluding ten hours, and is not entitled to payment of any temporary total disability if the injury is found to be compensable by the Industrial Commission.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. On July 27, 1993, Plaintiff was employed by Defendant-Employer as a tool shop and set-up man. Plaintiff has been employed by Defendant-Employer for approximately 26 years.
2. On July 27, 1993, Plaintiff slipped and fell on oil and injured his right knee. Plaintiff reported this injury immediately to his supervisor.
3. A few days later, Plaintiff had problems with his knee. The knee bothered Plaintiff on and off for several months. It would flare up at times.
4. On November 1, 1994, Plaintiff's knee flared up and became swollen. He told his supervisor again and Defendant-Employer sent Plaintiff to a company doctor. The company doctor referred Plaintiff to Dr. Scott Sherrill, a surgeon. Surgery was performed on Plaintiff on November 18, 1994.
5. When Plaintiff saw Dr. Sherrill, he gave a consistent history of having slipped and fallen on July 27, 1993.
6. Dr. Sherrill, who was the physician selected by the Plaintiff's employer, is of the medical opinion that the injury for which he treated Plaintiff in November and December of 1994 was caused by the fall that Plaintiff had at work on July 27, 1993.
7. Dr. Sherrill first examined Plaintiff on a referral from Dr. Reid on November 3, 1994, and Plaintiff gave him a history that he had injured his knee when he slipped and fell on some oil on the floor at his place of occupation approximately 15 months ago. At that time Dr. Sherrill's examination revealed that Plaintiff had large effusion which means a swelling or fluid within the knee, and it was his opinion that he probably had a tear of the medial meniscus of the knee, which is the cartilage inside the knee.
8. At the time of surgery, Plaintiff was found to have a chondral fracture of the medial femoral condyle, which is actually the cartilage surface which lines the bone to allow the knee to move. He had a large crack in that cartilage with a defect in the center of it that actually went down into the bone. Plaintiff told Dr. Sherrill that he had a lot of discomfort initially, but didn't think his knee had been injured severely and he seemed improved, then he seemed to have recurrent episodes of difficulty with the knee.
9. Plaintiff seemed to have recurrent episodes of pain in his knee, but the most frequent one he noticed for the first time was a significant swelling in his knee along with this and his knee did not seem to improve with the typical things he had done before. Dr. Sherrill's understanding was that Plaintiff had continued to work for the 15 months between the time of the injury and the time that he saw him in November of 1993.
10. Dr. Sherrill is of the opinion that Plaintiff's injury is related to the described accident, and he thought that Plaintiff had just reason for review.
11. When Dr. Sherrill was asked by Defendant about his statement that "it would certainly seem that his injuries were related to the described accident," Dr. Sherrill replied "that it was an injury where he slipped and fell in oil at work because that is the only injury Plaintiff described to me."
12. The basis for Dr. Sherrill's statement would be that he had a history presented to him of recurrent knee problems during a 15 month time frame after a described accident and a surgical finding that would be consistent with a chronic knee problem. The chondral fracture that Plaintiff had would very rarely present for immediate surgical treatment.
13. Dr. Sherrill testified in detail to the history given to him by Plaintiff in his first consultation with Plaintiff on November 3, 1994. This history is consistent with Dr. Sherrill's office notes which are attached to the Deposition. The injury that Dr. Sherrill discovered during arthroscopic surgery which he performed on Plaintiff's knee was entirely consistent with the history of the injury and the 15 month course prior to surgery. Specifically, Dr. Sherrill found that the type of injury that he found upon operation was the type of injury that could permit Plaintiff to continue to work for a period of time. However, plaintiff would be expected to worsen by the continual use of the knee and that the chondral fracture tends to occur, cause initial pain, but no swelling of its own that resolves; and then it frequently becomes more of a problem as that chondral fracture begins to enlarge. The edges of it become fragmented, begin to irritate the knee and begin to cause some secondary damage. It would not be unusual or out of the norm for a person who injured his knee in the manner that Plaintiff described to him to be able to continue to work, taking palliative medicines for a period of time.
14. The appearance of the knee to the Plaintiff or any other physician can be quite minimal until they develop the significant swelling. And, frequently that can occur shortly after the injury or many years down the road. Dr. Sherrill concluded that a period of 15 months from the initial injury to the significant swelling would not be anything out of the ordinary for the type of injury that Plaintiff had suffered.
15. Dr. Sherrill was of the opinion that the injury he observed in Plaintiff's knee could or might have been caused by the fall at work that Plaintiff described to him on his visit of November 3, 1994.
16. Dr. Sherrill's testimony totally and unequivocally supports Plaintiff's position that the injury he sustained on his job on July 27, 1993 caused the injury to his knee which resulted in medical treatment, medical expense, and a permanent partial disability to his knee of fifteen percent (15%).
17. Although Dr. Sherrill was defendant's authorized treating physician and there was no medical evidence to the contrary, Defendant-Employer defended this claim with merit.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident on July 27, 1993, for which there are compensable consequences. N.C.G.S. § 97-2(6).
2. Defendant shall pay compensation to Plaintiff at the rate of $293.07 per week for 30 weeks for the 15% permanent partial disability Plaintiff suffers to the right knee. N.C.G.S. § 97-31(15).
3. Defendant shall pay all medical expenses incurred by Plaintiff as a result of this injury by accident. N.C.G.S. § 97-25.
4. Defendant did not present a frivolous defense, therefore defendant shall not pay Plaintiff's counsel an attorney fee pursuant to N.C.G.S. § 97-88.1.
5. Since the treating physicians were all the Defendant's choice, Defendant is not entitled to an independent medical evaluation. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendant shall pay permanent partial disability compensation to Plaintiff in the amount of $293.07 per week for 30 weeks for the 15% permanent partial disability Plaintiff suffers to the right leg. This compensation has accrued and shall be paid to Plaintiff in a lump sum.
2. Defendant shall pay all medical expenses incurred by Plaintiff as a result of this injury by accident.
3. Plaintiff's counsel is entitled to 25% of the Award in this matter which will come directly from the amount awarded to plaintiff.
4. Defendant shall pay the costs due the Commission.
 S/ __________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/rst